Thank you. May it please the Court, my name is Jack Pelzer here today representing the appellants. With the Court's permission, I'd like to reserve four minutes for rebuttal. The first of several questions in this appeal is whether the Atwells were the procuring cause of this sale, or did they abandon Westgate in favor of another more lucrative client seeking to purchase the same property? Now there were multiple abandonment issues raised during the course of the trial. This particular one comes to this Court as a matter of law based on the admissions by Heather Atwell at trial. And under the Reeves case, those admissions are binding and must be accepted by this Court. And that admission is that she did in fact take on a competing client seeking to purchase the exact same property in competition with Westgate. That, as a matter of law, operates as an abandonment of the Westgate attempt because it is simply impossible for a single fiduciary to represent two different masters, two competing parties who are going for an opportunity which only one of them can possibly get. Representing two, one or the other, is mutually exclusive. And therefore, taking on these new clients at twice the commission rate as a matter of law affected an abandonment of Westgate. The comment was made in my... Counselor, did you present this argument to the District Court? Your Honor, we presented the abandonment issue to the District Court in our motion for judgment as a matter of law and we honed in on the abandonment by the competing client in the renewed judgment as a matter of law. It was page 28 of that motion, excuse me, page 28 of the supplemental record excerpts, page 19 of the motion, where we honed in on this particular breach of fiduciary duty as being the basis for the abandonment. But to go one step further, Judge Caldwell, this issue does come before this Court as a pure question of law and under... And the record was fully developed. In fact, there's no doubt at all from Heather Atwell's own mouth that on the very day the Westgate contract went hard, she got a phone call telling her, don't bring your other clients because the property's already been sold. So the record is fully developed. It's purely a matter of law and under this Court's decision in Bulger and the other cases we cited, this Court has discretion to reach this issue even if it was not ever raised in the District Court. So simply put here, we have a faithless fiduciary who, as a result of being faithless, waives and abandons a right to the commission and that should be the ruling of this Court as a matter of law. Moving on to the fraud issue, if I may, there is no fraud in this case because there is no fraudulent misstatement. Mr. Siegel expressed an interest in buying the Riviera Hotel instead of or who knows, perhaps in addition to the Las Vegas Hilton. But merely expressing an interest in buying the Riviera cannot rise to the level of a fraudulent misstatement. This is purely a prediction of future business practices and opinion and it's very vague and highly subjective. Simply cannot rise to the level of a fraudulent misstatement. Excuse me, was that issue raised? Yes, it was, Your Honor. How was that raised? Yes, it was, Your Honor. That was raised at page 88 of the constitutional motion for judgment as a matter of law and it was raised in the supplemental record on appeal, or excuse me, in the renewed motion, which is in the supplemental record on appeal at page 32, page 23 of the motion. Just to be clear, those are motions, but kind of after the fact, where was it raised in the trial or pre-trial? Well, it was not raised pre-trial that I'm aware of, Your Honor. There was no objection made to Heather Atwell's testimony that David Siegel expressed this interest. In fact, that was another undisputed fact. David Siegel toured the property with David Atwell and so the fact that there was this expression of interest was not a factual issue. Because you're now saying that it was puffery opinion, etc. Was that a jury instruction? Your Honor, I don't recall a jury instruction on that, but it was raised in the JMAW that it should not have gone to the jury at all, regardless of whether the jury was properly instructed. It should have been taken from the jury by the judge in response to the JMAW or after the fact with the renewed motion. Because there's simply no basis for saying that David Siegel didn't mean what he said or that what he said was false. It can neither be true nor false. It's almost like saying I like chocolate. Well, that certainly may be true, but no one wants a steady diet of it either. And you may not want bad quality chocolate. But it's really not a statement that's capable of being true or false. The Atwells attempted to make the statement seem false by noting that Mr. Siegel didn't tell his CFO about it, about his interest in the Riviera. But Mr. Siegel very plainly testified, this is at pages 450 and 451 of the record, that he wouldn't have gone to his CFO until after he had done his due diligence, which was his walkthrough with David Atwell when he concluded that the Riviera was a jump and a teardown and he wasn't going to buy it. And the CFO's testimony was not to the contrary. In fact, he very plainly testified that this is a one-man  the Riviera for $75 million. It would be a serious offer whether he had talked to the CFO about it or not. So the record just doesn't suggest or support the suggestion that the interrelationship between David Siegel and his CFO shows that this was a false statement. And what's more, there was no damage proven resulting from the fraud. The judge himself at trial ruled that the damages in this case, be they for commissions or for fraud, were capped at the amount of the commission. That there was no additional damage over and above the commission. And the judge was very, very plain about that at trial. Now, of course, he reversed himself post-trial and in effect whipsawed Westgate in the process to the tune of another million dollars worth of damages solely for fraud. So that was another issue that was amply preserved. In fact, Westgate won the issue at trial and it was only post-trial that it was lost. Now, Heather Atwell, according to my friend's answer brief, supposedly testified about the pain and suffering and loss of opportunity and whatnot that came from the fraud. But if you look through the ten pages of transcript that are cited, it's very clear that at this point, she's referring to her anxiety and lost concentration, business, whatever resulting from her work on the financing for the purchase of the Las Vegas Hilton, not based on the Riviera. Or it was based solely on this distaste of being involved in litigation itself. And so there's no evidence of damages for fraud here. We're also entitled to a new trial for two different reasons. One is that the trial court cut off questioning about the licensure status of RPA Inc. and its ability to recover a real estate commission. If you look at the transcript, and we quoted the sections in the reply brief, the judge did, in fact, cut off Westgate from questioning about RPA's real estate licensure status. It was a definitive ruling and RPA's licensure status and developing that record was essential to making a j-mal or bringing to this RPA Inc. was entitled to recover a commission at all. We're also entitled to a new trial on novation because our novation instruction was rejected by the court. Now, it's conceded here, as it properly should be, that if the instruction properly states the law and there are facts in the record to support it, the instruction should be given. Now, there's questions raised about whether novation applies in a quantum merit context, but quantum merit is just an applied contract. It can be novated just like any other contract. And whether or not there was an intent to replace one contract with the other is a matter for the jury to decide based on the party's actions and subjective intent is not the issue. So the jury should have been instructed on novation and given an opportunity to rule for Westgate on those grounds. I'm getting into my rebuttal time, but I do want to speak about the issue of the district court's misinterpretation of the verdict. The district court himself noted when he made up this verdict form, it was the judge's verdict form, and sent it back to the jury, that there was a possibility there would be some double recoveries here. And he was going to adjust that when the verdict came back. He was going to take care of it. Well, frankly, he didn't. And instead of doing that, he wound up quadrupling an award that should not have been quadrupled in that fashion. There's simply no basis in this case, the way it was tried, the theory of the case, for saying that any one plaintiff had a separate claim against any one defendant. It was all plaintiffs against all defendants all the way through. And the judge recognized that during the trial. So, treating this as though the jury went off on a lark on its own and decided it was going to apportion damages when no apportionment instruction had been given was improper and a misinterpretation of the jury's verdict. So for those reasons, we ask that you reverse counsel. Did you request an apportionment instruction? Or did you object to the instruction? We did not. There was no apportionment instruction nor was there an apportionment issue. It would have been improper for there to be an apportionment instruction because there was no theory the case was tried upon where the damages could be apportioned from one party against another party. It was all plaintiffs against all defendants and the district court recognized that during the trial. Again, we ask that you reverse entirely or alternatively reverse on the fraud judgment or alternatively grant new trial or alternatively remit the verdict. Thank you. Thank you. Mr. Vogt? Good morning to the panel and may it please the court. What is finally becoming clear in this entire appeal is that Westgate is willing to say anything to undo the unanimous jury verdict and get around the arguments it clearly waived at trial. The trouble with that argument is that absent clearly erroneous findings by the district court, jury verdicts are sacrosanct in the United States as this court held in Westinghouse Electric even assuming the verdict could be considered inconsistent. And we're not there. It is well established that in most cases where a jury renders inconsistent verdicts, the trial judge must allow those verdicts to stand. So instead of telling you what specifically happened at the trial and where in the record as you asked him, as you asked Mr. Pelzer, where in the record was that raised at trial, they do not tell you what was clearly erroneous as a matter of law and the standard for review. They have excerpted small portions of the record asking now for this court to step in as the jury to substitute its judgment for that of the jury and the trial judge that sat through the trial, reviewed the entire record, and then later issued a 13-page written order. The panel for the first time in their reply brief, appellants raised the applicability of the Mercury decision to claim that waiver does not apply to the district court misinterpreting quote-unquote the verdict because it's a legal issue. The trouble with that argument is that appellant's remedy was to ask the jury before the jury was let go, and this they did not do, instead allowing the court to dismiss the jury. As you correctly asked, we believe that waiver applies to this argument. This is not a situation where an exception to waiver applies. Even if it is an issue of law, Mercury requires that there be an adequately developed record to address it. Here it cannot be overlooked that this issue must depend on the record below, but Westgate prevented the development of that record. RPA would submit that YETI is absolutely on all fours. The district court expressly asked the parties if they objected to the verdict form. During the three days that the jury deliberated, the Deckers could have objected to problems with the form and did not. Finally, the Deckers could have objected after the verdict had been announced, but before the jury was released. Here, at Record Excerpt 143, during the oral MJMOL, Westgate argued about duplicative damages for the quantum Meribot and Farad claims. That is to say that any damages for the former would be substituted with the latter. The judge said, let's wait and see. Not he didn't. He said, let's wait and see. At Record Excerpt 151, when moving to the verdict form, Westgate had no objection to it, despite the fact that they had notice of this quote-unquote duplication issue, as noted above. The jury deliberates, and during that time, Westgate does not raise this as an issue. And we have Record Excerpt 28. The verdict is returned and read out. The court asked if there's any reason the jurors could not be dismissed, and Westgate said no. So, it wasn't that he didn't deal with it. He asked. He asked here. They didn't deal with it. And you're absolutely right. I believe there was a question from Judge Caldwell. They didn't even seek an apportionment instruction. So, after Westgate argued about duplicative damages in the MJMOL context, after the judge said to wait and see what the jury did, giving Westgate full notice of when to discuss the issue. Wait and see. After the verdict form was presented, after the jury deliberated, and after the jury's verdict was read out, Westgate still did not object. These circumstances are identical to YETI. And the YETI court is clear. By waiting until post-trial motions to raise its specific contentions, Deckers prevented the court from correcting any problems ex ante, and for some of these contentions, prevented the development of an adequate record. This is precisely what Westgate has done here, as to the verdict form and the verdict render. Now, they want you to step in for issues they clearly waive. This court should decline to speculate now, just as the YETI court declined to do. An interesting issue that came to us only in the reply, more clearly, was even setting aside the waiver argument. What are they asking you to do? And they kind of got to it there at the end. They're asking you to rule that the district court judge erred in interpreting and entering judgments as he did, accumulating the damage award. Westgate could not have known about this until judgment was entered, so it's not something that could have been raised. That's the best we can amalgamate what that argument actually is. We disagree. As I just argued, we believe Westgate had full notice of this issue and failed to raise it timely, perhaps purposely. Second, even if that is the case, Westgate's briefing on this issue is most notable for what it does not tell this panel. It does not tell this court the scope of its review as to the issue. It does not clearly articulate what remedy it is seeking from the court and Westgate's briefs are simply a smattering of cases, none of which appropriately frame the issue. This is telling, and we believe the reason for this is that it wants to avoid its high burden that must be met. We need to frame this issue for the court. To be clear, what Westgate is asking for is this court to reduce the judgment from what the district court entered, that is to say, a remediator. Westgate has backed away from this in its reply group. Westgate did not request a new trial as to the error, but this is precisely what Westgate asked. It filed a Rule 59 motion seeking a new trial. The district court denied that request as so this court is guided by the standard of review for such a request. This court reviews a district court's denial of motion for a new trial for an abusive discretion. The abuse discretion standard requires us to uphold a district court's determination that falls within a broad range of permissible conclusions. That's the Molsky decision. This court itself has recognized the limited nature of the appellate function in reviewing the district court's denial of a motion for a new trial in some where the basis of a Rule 59 ruling is that the verdict is not against the weight of the evidence. The district court's denial of a Rule 59 motion is virtually unassailable, and in such cases, the court reverses for a clear abuse of discretion only where there is an absolute absence of evidence to support the jury's verdict. This is the standard here. The court need only ask whether the district court's entry of judgment as it did falls within a range of permissible conclusions. One such conclusion as set forth in our briefing is that the jury intended to award 1.5 million dollars on the Kuwata Meroweth claim, finding that RPA was prevented from consummating the sale of the LVH and were therefore entitled to the commission. And in addition, the RPA was entitled to one million fraud damages independent of the loft commission. Obviously this relates to the evidence in the record, so this court must determine whether there is an absolute absence of evidence to support the jury's verdict. This is a high burden. There was evidence to support a verdict on each of these claims. We've gone over that, and it's important to note that in these intense briefings that ensued after the verdict, the court issued a 13 page order, and the court spent a fair bit of time going through the evidence and he noted quite appropriately that the plaintiffs put forward testimony that their customary fees are 1% of the purchase price of a given property, and this testimony was bolstered by the evidence that defendants agreed to pay plaintiffs a 1% commission. And then contrary to this allegation that there was not fraud evidence submitted, it is robust. The plaintiffs pointed to evidence in the record illustrating that the defendants interest in purchasing the Riviera was when they could not afford to purchase representing an interest in engaging plaintiffs Chinese clients. In our brief, we go over, forgive me, we go over section three, we go over that Mr. Siegel's representations were not mere puppet. They were expressions of opinion as distinguished from representations of fact, and that may be the predicate for a charge of fraud. They clearly don't fall to be more clear, they clearly do not fall within the definition of a non-actionable statement of opinion. A representation is one of opinion if it expresses only a belief of the maker without certainty as to the existence of a fact or his judgment as to quality, value, authenticity, or other matters. So it's important to note that Mr. Siegel testified he was very excited about it, and immediately said he wanted to make a $75 million offer. This was also around the same time that he told RPA about the broker. So it's important to note that he said he really wanted the Riviera and he was eager to make the purchase. Mr. Siegel said he was no longer pursuing the LVH and they should just focus on the Riviera. These are far more than simple expressions of interest or opinions that Westgate might possibly purchase for Riviera. Instead, they are affirmative representations, and the jury itself apparently agreed there was sufficient evidence. Briefly, to my colleague's comments that there was insufficient factual basis for $1 million fraud damage. Under Nevada law, fraud damages can encompass both economic and non-economic harm. Westgate fails to address the sole issue of whether substantial evidence supports the fraud verdict. The record here clearly sets forth substantial evidence of non-economic damages related to Westgate's fraud. Specifically, Ms. Atwell testified extensively as to the human capital and reputational resources my client put into procuring the Riviera for Westgate, a property it never intended to purchase. These efforts could have been directed to serve other clients, but for Westgate's fraud. She also testified that the back and forth with the Riviera, while Westgate was of the LVH, had impacted her father emotionally while he was still alive. Ms. Atwell was clearly testifying as to the effects of Westgate's fraud as a whole, not simply being a party to the litigation. That is just absolutely not true, and the record reflects differently. The district court did not consider this lost client as part of the substantial evidence supporting fraud damages. Instead, it noted the jury heard evidence that Westgate had intentionally misdirected RPA to pursue a purchase which was never intended to be consummated by Westgate, and that RPA had expended human capital and reputational resources. They heard evidence from Ms. Atwell, and that Mr. Atwell was gravely ill, and that Westgate's action and failure to pay essentially took advantage of his inability to advocate for his own interests. And to the extent that Westgate contends that the amount awarded above the 1% commission was too high, this long held that the damages of the type described above are peculiarly within the discretion of the jury. Excuse me, of the jury, and that's Pacific Greyhound. Since the amount awarded above the 1% commission is not outrageous, the judgment should be affirmed. In my last few minutes, I would like to address that the issues of novation and the issue of the fiduciary duty were waived by Westgate, and that's important to know. That's covered in your brief, isn't it? It is, Judge Hopkins. It is, Judge Hopkins. Finally, with the few remaining minutes I have, I want to address a procedural issue that I don't believe is going to get before you because we believe waiver deals with it, but there is a joint motion stipulation related to the exhibits pending. The United States District Court for Nevada does not keep copies of admitted exhibits in the record and the court reporter did not transcribe a video deposition that was played in lieu of testimony. This is a joint uncontested motion. I believe, as our arguments in the briefing make clear, the exhibits subject of that stipulated motion are necessary, but only if the court finds that these issues were not waived. So hearing no questions, I'll move on from that. Final other point procedurally, we filed a revised brief and we cite two excerpts of the record and supplemental exhibits of the record and then the exhibits attached to the stipulated motion. Unless there are no questions, I thank the panel for your attention this morning and the opportunity to argue this important issue. This was a unanimous jury verdict. A unanimous jury were front and center and they were waived and this is not time to ask another court to redo that verdict. RPA respectfully requests that this court affirm the judgment of the District Court below and again, thank you for your time. Thank you. Let me turn back to Mr. Pelzer, please. Thank you, Your Honor. I'll deal with the points in the order that my colleague presented them. First of all, our argument on the jury verdict is not an inconsistency argument. That is a mischaracterization of the argument in order to alter or to create a waiver that otherwise wouldn't exist. We did not pull the jury because we believed that the jury verdict was clear and that the judge was going to do what he promised to do and avoid double counting. And again, as I say, there was no basis in law, no basis in the way the case was tried, no basis in fact for apportioning these damages one plaintiff versus one defendant in any combination. So that was inappropriate and that's why we requested the remitter. A new trial is solely at the option of Ms. Atwell, should the remitter be ordered. We have a situation here where the judge simply reversed himself. He ruled one way at trial and then another way afterward and that I would suggest to this court constitutes an abuse of discretion because at least my client, having been whipsawed, led down the garden path, whatever you'd like to say. Counsel in his argument talked about the lost opportunity based on the fraud claim but the way I read the answer brief, they affirmatively waived any lost opportunity and so that should not be considered by this court on the fraudulent nature of the statement. Simply saying you're very interested as opposed to being interested doesn't raise the interest up to a level of fraud and Mr. Siegel was correct. He was not in contract on the LVH at the time he had those conversations with David Atwell. Again, we ask you reverse. Thank you. Thank both counsel for your argument this morning. The case of Resort Properties of America versus Central Florida Investments is submitted and we're adjourned for the morning.
judges: Hawkins, McKeown, Caldwell